IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ZON LED, LLC, )
  )
　Plaintiff, )
  )
v. ) Case No. CIV-16-1090-D
  )
POWER PARTNERS, INC.; *et al.*, )
  )
　Defendants. )

# **O R D E R**

Before the Court is Defendant Inventronics USA, Inc.'s ("Inventronics USA") Motion to Dismiss Amended Complaint [Doc. No. 46], filed pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). Plaintiff Zon LED, LLC has filed a response [Doc. No. 54] in opposition to the Motion, and Inventronics USA has filed a reply brief [Doc. No. 61]. The Motion is fully briefed and at issue.

## **Factual and Procedural Background**

Plaintiff sells lighting products to commercial customers. It brings suit to recover damages allegedly caused by the failure of power supply products or "LED drivers" sold by Power Partners, Inc. ("Power Partners") and incorporated into Plaintiff's LED lighting products.[1] *See* Am. Compl. [Doc. No. 37], ¶ 6. The drivers were manufactured by a Chinese company, Inventronics, Inc.[2] Plaintiff has sued Inventronics USA, an Oklahoma

---

[1] Power Partners was a named defendant but has been dismissed for lack of personal jurisdiction. *See* 9/19/17 Order [Doc. No. 65].

[2] Inventronics, Inc. was a named defendant but has been dismissed for lack of service. *See* 4/28/17 Order [Doc. No. 63].

corporation with a distribution center in Oklahoma, as the alleged "United States presence" of Inventronics, Inc. *See* Am. Compl. [Doc. No. 37], ¶ 3. Plaintiff asserts a fraud claim under Massachusetts law (*see id*. ¶ 38), and breach of warranty claims under Oklahoma's Uniform Commercial Code ("UCC"), Okla. Stat. tit. 12A, §§ 2-313 to 2-315. *See id*. at 17-19, ¶¶ 42, 47, 52. Federal subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.[3]

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.

---

[3] The Amended Complaint was filed after the Court raised *sua sponte* a lack of sufficient factual allegations in Plaintiff's Complaint to establish the citizenship of all parties. The Amended Complaint both cured this deficiency and added factual allegations regarding certain shipments of drivers from Inventronics USA to Plaintiff and included as an additional exhibit, a copy of an invoice from Inventronics USA dated July 25, 2011. *See* Am. Compl. [Doc. No. 37], ¶¶ 8, 11 & Ex. 9 [Doc. No. 37-9]. Inventronics USA had moved to dismiss the Complaint before the amendment, and renews its motion in response to the Amended Complaint.

A claim of fraud is governed by the heightened pleading requirements of Rule 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotations omitted); *see Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). To determine if factual allegations satisfy Rule 9(b), the Court reviews only the text of a complaint; matters outside the pleading may not be considered unless permitted by Rule 12(b)(6). *See Toone*, 716 F.3d at 521; *Sikkenga*, 472 F.3d at 726; *Tal*, 453 F.3d at 1264 & n.24. The Court accepts "as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the non-moving party." *Sikkenga*, 472 F.3d at 726.

## Discussion

**A.     Fraud Claim**

Plaintiff's fraud claim has two parts: 1) fraudulent inducement of Plaintiff to use substandard LED drivers in its lighting products through "bait and switch tactics;" and 2) fraudulent "performance" conduct that concealed defects in the LED drivers and caused Plaintiff to continue using them after numerous failures had occurred. *See* Am. Compl.

[Doc. No. 37] at 14 & ¶¶ 32-34, 35-37. In pleading this fraud claim, Plaintiff does not specify what acts were committed by whom but, instead, attributes representations and conduct to "Defendants" collectively and refers to Inventronics USA and Inventronics, Inc. collectively as "Inventronics." *See id*. ¶ 3 & ¶¶ 32-35, 37. Inventronics USA contends this failure to identify any statement or action "attributed specifically to Inventronics USA" is fatal to Plaintiff's fraud claim against it. *See* Mot. Dismiss [Doc. No. 46] at 6 (emphasis omitted). Inventronics USA also asserts that Plaintiff has not sufficiently identified any false representations made by Inventronics USA or any of its agents or employees, and has failed to plead certain elements of fraud, including a material misrepresentation of fact (rather than opinion) and reasonable reliance by Plaintiff.

Plaintiff, of course, disagrees with Inventronics USA's assessment of the Amended Complaint and argues that "sufficient particularity" may be found by "taking into account the allegations of the Complaint, its exhibits, and the documents or other information referenced in the Complaint." *See* Pl.'s Resp. Br. [Doc. No. 54] at 1.[4] Plaintiff goes further, and provides as Exhibit 1 to its brief "advertising placed in a trade publication"

---

[4] Plaintiff is correct that there are exceptions to the general rule that "the sufficiency of a complaint must rest on its contents alone." *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But the exceptions are limited: "attached exhibits and documents incorporated into the complaint by reference," *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc*., 680 F.3d 1194, 1201 (10th Cir. 2011); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322, (2007); *Gee*, 627 F.3d at 1186; "'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,'" *Gee*, 627 F.3d at 1186 (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)); *accord Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB-TV, L.L.C*., 493 F.3d 1210, 1215 (10th Cir. 2007)); and facts subject to judicial notice. *See Gee*, 627 F.3d at 1186; *see also Tellabs*, 551 U.S. at 322, *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

that is offered to support Plaintiff's allegation that Inventronics USA should be regarded as the "United States presence" of Inventronics, Inc. and show that affiliated entities of Inventronics, Inc. "fail to distinguish themselves" to the public. *See id.* at 1-2 & Ex. 1 [Doc. No. 54-1]. Plaintiff provides no legal authority that would permit the Court to consider Plaintiff's exhibit of trade magazines in ruling on Inventronics USA's Motion. The Court finds these materials to be inappropriate for consideration under Rule 12(b)(6), and disregards them. Further, Plaintiff provides no legal authority, and the Court is aware of none, for allowing a conclusory allegation that Inventronics USA is the "United States presence" of Inventronics, Inc. to serve as a sufficient factual basis to disregard the separate legal entities and treat the two corporations as one. Thus, the Court proceeds to determine whether the Amended Complaint provides sufficient particularity in its factual allegations and attached or referenced materials to state a fraud claim against Inventronics USA.

To establish a common law claim of fraud requires proof of the following elements: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 212 P.3d 1210, 1217-18 (Okla. 2009) (footnotes omitted).[5] In this case, Plaintiff argues that the Amended Complaint alleges the following

---

[5] As discussed *supra*, Plaintiff asserts in its pleading that the fraud claim is governed by Massachusetts law. However, like Inventronics USA (*see* Mot. Dismiss [Doc. No. 46] at 9 & n.11), the Court relies for convenience on Oklahoma case law because the Court is unaware of any significant difference between the laws of Oklahoma and Massachusetts regarding the elements of common law fraud and because Plaintiff does not object to this approach. In fact, Plaintiff cites cases from numerous jurisdictions in its response brief, but none from Massachusetts. *See* Pl's Resp. Br. [Doc. No. 54] at iii-v (Table of Authorities).

"fraudulent 'statements' by Inventronics USA: (1) providing perfect specimens to Plaintiff for testing to induce Plaintiff to purchase from Defendants, then delivering production units that were nothing like the specimens; (2) promising Plaintiff particular performance characteristics for the drivers . . . ; and (3) lying to cover up the massive product failures that occurred . . . ." *See* Pl.'s Resp. Br. [Doc. No. 54] at 3-4 (quotation in original). These allegations do not appear in the Amended Complaint but, according to Plaintiff, can be inferred from other allegations and the attached exhibits.

The factual basis for the first representation regarding product specimens is an allegation that Plaintiff received "a batch of sample PIL150s for testing circa August 22, 2011," and an attached invoice dated July 25, 2011, showing a sale of "Materials" from Inventronics USA to Plaintiff. *See* Am. Compl. [Doc. No. 37], ¶ 8 & Ex. 9 [Doc. No. 37-9]. Assuming the invoice reflects a sample shipment of drivers provided by Inventronics USA, Plaintiff does not allege the samples were accompanied by any statement or representation of Inventronics USA that Plaintiff would receive identical drivers if it purchased Inventronics, Inc.'s products in the future, knowing later orders would be filled with different, inferior products. Plaintiff simply does not identify any "who, what, when, where and how" of a false representation by Inventronics USA related to a 2011 delivery of products to Plaintiff for testing. Further, the Amended Complaint states Plaintiff decided "to use Inventronics/Power Partners drivers in its LED lighting products" based on performance of the samples "and Plaintiff's belief that the production products would be comparable to the samples." *Id*. ¶ 8. Plaintiff does not allege facts from

which to conclude that Inventronics USA intended for Plaintiff to rely on any implicit representation that may have accompanied a sale of sample products.

The factual basis for the second representation regarding promised performance of the products is an allegation in the Amended Complaint that "specification sheets" (referred to in the Amended Complaint as "brochures", *id*. ¶ 6, and shown by attached exemplars, *see id.* Exs. 1-3 [Doc. Nos. 37-1 to 37-3]) contained material misstatements regarding the "mean time between failure" or "the expected lifetime of the products." *See* Pl.'s Resp. Br. [Doc. No. 54] at 7-8. But the Amended Complaint does not state that Inventronics USA provided any specification sheet or brochure to Plaintiff, and the attached exhibits bear only the names of Power Partners and Inventronics, Inc. Further, in its brief, Plaintiff speculates it either "received Inventronics' specification sheets from Power Partners or . . . got online and downloaded them directly." *Id*. at 17-18. Either way, there is nothing in the Amended Complaint to suggest that the specification sheets reflect statements by Inventronics USA.

The factual basis for the third representation regarding the concealment of defects is an allegation in the Amended Complaint that "Inventronics" analyzed some of the failed drivers in June 2013 and provided failure analysis reports that misrepresented the nature of the problem. *See* Am. Compl., [Doc. No. 37], ¶ 21. Copies of the reports are attached to the Amended Complaint as Exhibits 4 and 5 [Doc. Nos. 37-4 & 37-5]. Nothing in this allegation or the reports suggests they were provided to Plaintiff by Inventronics USA or contain statements of Inventronics USA. Plaintiff argues in its brief that employees of Inventronics USA were likely involved in preparing the reports because the names listed

in the document headings are "mostly American, not Chinese." *See* Pl.'s Resp. Br. [Doc. No. 54] at 7. This speculative argument is unsupported by the attached exhibits, which contain headings that list team members using only first names and do not permit any inference of ethnicity, assuming such an inference would identify a particular corporation. For example, the full names of the "QC" team members (which are referred to in the headings as "Mark/York/Braun") appear on the last page of each report as "Mark Cao," "York Ma" and "Braun Liu." See Ex. 4 [Doc. No. 37-4] at 3; Ex. 5 [Doc. No. 37-5] at 3. In short, Plaintiff has failed to state sufficient facts to show that Inventronics USA knowingly or recklessly made a material misstatement to Plaintiff with the intent that Plaintiff would act on it.

For these reasons, the Court finds that Plaintiff has failed to state a plausible claim of fraud in the manner required by Rule 9(b).

**B.     UCC Claims**

Plaintiff claims Inventronics USA breached an express warranty that the LED drivers were "'highly reliable' with expected average life spans of three to four decades" and breached implied warranties of merchantability and fitness for a particular purpose. *See* Am. Compl. [Doc. No. 37], ¶ 43 & ¶¶ 46-56 (emphasis omitted). Inventronics USA seeks dismissal of all warranty claims because Plaintiff has not alleged it was a "seller" of the defective drivers for UCC purposes. *See* Okla. Stat. tit. 12A, § 2-103(1)(c). In addition, Inventronics USA seeks dismissal of the implied warranty of merchantability claim because Plaintiff has not alleged it was a "merchant" of the LED drivers (*id.* § 2-104(1)), and dismissal of the express warranty claim because Plaintiff does not allege the product

8

specifications or brochures, which contained the alleged warranty, formed part of the basis of any bargain with Inventronics USA.[6]

Inventronics USA argues, and Plaintiff does not disagree, that a UCC warranty claim will lie only against the "seller" of the goods at issue. The UCC defines a "seller" to mean "a person who sells or contracts to sell goods" and a "sale" to mean "the passing of title from the seller to the buyer for a price." *See* Okla. Stat. tit. 12A, §§ 2-103(1)(c), 2-106(1). Plaintiff argues that it has pleaded sufficient facts to show Inventronics USA is a "seller" because the Amended Complaint states Inventronics USA distributed products manufactured by Inventronics, Inc. (*see* Am. Compl. [Doc. No. 37], ¶ 6), and a "seller" includes a "distributor." *See* Pl.'s Resp. Br. [Doc. No. 54] at 15-16 (citing cases). Plaintiff also relies on the July 2011 invoice attached as Exhibit 9 to the Amended Complaint, discussed *supra*, showing a sale of materials by Inventronics USA. *See id.* at 16.

Plaintiff's conclusory arguments miss the point. Merely by labeling Inventronics USA as Inventronics, Inc.'s distributor is insufficient to show that Inventronics USA was the distributor or seller of the allegedly defective drivers in this case.[7] To the contrary, the Amended Complaint specifically alleges that Plaintiff purchased the allegedly defective

---

[6] Inventronics USA prefaces these substantive arguments with a choice-of-law argument, asserting that the Amended Complaint does not plead sufficient facts to support the application of Oklahoma's UCC provisions. *See* Mot. Dismiss [Doc. No. 46] at 15-17. It proceeds to argue, however, that Plaintiff's "warranty claims are legally insufficient under the UCC provisions of Oklahoma (or any state for that matter)." *Id.* at 17. Inventronics USA focuses on the latter argument in its reply brief. *See* Reply Br. [Doc. No. 61] at 7-9. For reasons discussed *infra*, the Court finds that it need not reach the choice-of-law issue.

[7] Plaintiff alleges that it ordered Inventronics, Inc. drivers from Power Partners beginning in "late 2011" and continuing through September 2013, and that product failures began in 2012 and continued into 2014. *See* Am. Compl. [Doc. No. 37], ¶¶ 11-12, 15-16, 20-21, 23-24.

drivers from Power Partners, which is also alleged to be a distributor of Inventronics, Inc.'s products (*see* Am. Compl. [Doc. No. 37], ¶¶ 2, 11, 15, 23), and that the sample drivers shipped by Inventronics USA to Plaintiff in July 2011 "worked well with no unexpected failures." *Id*. ¶ 8. The Court therefore finds that Plaintiff has failed to allege sufficient facts to state a plausible UCC warranty claim against Inventronics USA.

**C.     Opportunity for Amendment**

Plaintiff has not requested, either informally in its brief or by a motion under Fed. R. Civ. P. 15(a)(2) and LCvR15.1, to further amend its pleading to add factual allegations in support of its claims. Plaintiff does argue, however, that it should be permitted to conduct discovery that will provide any missing information. *See* Pl.'s Resp. Br. [Doc. No. 54] at 7, 10, 17-18. Presumably, Plaintiff recognizes it cannot plead its claims with greater particularity or factual matter without gathering additional information through discovery from Inventronics USA. Plaintiff's proposal to obtain through discovery the necessary facts to support a plausible claim lacks any citation of legal authority. The argument is contrary to case law holding that a plaintiff must satisfy the pleading standard of Rule 8(a) to "unlock the doors of discovery." *See Iqbal*, 556 U.S. at 678-79; *Ghailani v. Sessions*, 859 F.3d 1295, 1303-04 (10th Cir. 2017). Therefore, because discovery is not warranted, because Plaintiff has not asked to amend its pleading, and because a previous amendment has failed to state a plausible claim against Inventronics USA, its Motion will be granted without leave for further amendment.[8]

---

[8] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortgage Electronic Registration Sys.,*

**Conclusion**

For these reasons, the Court finds that Plaintiff has failed to allege sufficient facts to establish a plausible fraud or breach of warranty claim against Inventronics USA and that this action against Inventronics USA should be dismissed.

IT IS THEREFORE ORDERED that Defendant Inventronics USA, Inc.'s Motion to Dismiss Amended Complaint [Doc. No. 46] is GRANTED. This Order disposes of the only remaining party and all remaining claims. Therefore, a separate judgment shall be entered.

IT IS SO ORDERED this 17th day of October, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

*Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) (citing *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999) and *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989)). Also, refusing leave to amend may be justified due to a plaintiff's "failure to cure deficiencies by amendments previously allowed." *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).